UNITED STATES of America and William D. Norsworthy, Special Agent, Internal Revenue Service, Petitioners-Appellees,

v.

SCORNAVACCO'S RESTAURANT, INC., et al., Respondents-Appellants.

No. 75–1483.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1975.

Decided Dec. 24, 1975.

As Amended Dec. 29, 1975.

---

William A. Barnett, Charles R. Purcell, Chicago, Ill., for respondents-appellants.

Scott P. Crampton, Asst. Atty. Gen., William A. Whitledge, Atty., Tax Div., Dept. of Justice, Washington, D.C., Samuel K. Skinner, U. S. Atty., Chicago, Ill., for petitioners-appellees.

Before SPRECHER, TONE and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

Upon petitions to enforce Internal Revenue Service summons, the question has arisen whether a restaurant business, whose books and records were sought to be examined, was operated in the year 1969 by a corporation formed in that year or by Anthony Scornavacco as sole proprietor who claimed his privilege against self-incrimination.

I

For several years prior to 1969, the Scornavacco family had owned and operated a restaurant in Highwood, Illinois, known as "Scornavacco's Restaurant" and as "Washington Gardens."

On January 13, 1969, the Secretary of State of Illinois issued a certificate of incorporation to Scornavacco's Restaurant, Inc. "to own and operate a restaurant and tavern to sell and serve food and beverages; to lease or own real estate in connection therewith."

Anthony Scornavacco conceded that the corporation operated the restaurant business beginning in 1970 but contended that the business was operated as his sole proprietorship in 1969. He refused to honor the summons insofar as it pertained to the books and records for 1969, relying upon *Bellis v. United States,* 417 U.S. 85, 87, 88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974), wherein the Supreme Court said:

> It has long been established, of course, that the Fifth Amendment privilege against compulsory self-incrimination protects an individual from compelled production of his personal papers and effects as well as compelled oral testimony. . . .
>
> On the other hand, an equally long line of cases has established that an individual cannot rely upon the privilege to avoid producing records of a collective entity which are in his possession in a representative capacity, even if these records might incriminate him personally.

After a hearing at which both the government and the Scornavaccos introduced documentary evidence and counsel for both sides entered into oral stipulations of fact, the district court found in favor of the government and against the

Scornavaccos, and ordered that "Internal Revenue summons is to be obeyed."

## II

All of the documentary evidence and the oral stipulations of fact pertained to the formation of the restaurant corporation and the extent to which it operated the restaurant business in Highwood.

On January 13, 1969, the Secretary of State of Illinois issued a certificate of incorporation to Scornavacco's Restaurant, Inc. Ill.Rev.Stats. ch. 32, § 157.49 provides:

Upon the issuance of the certificate of incorporation by the Secretary of State, the corporate existence shall begin, and such certificate of incorporation shall be conclusive evidence, except as against the State, that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under this [Business Corporation] Act.

The certificate of incorporation was filed for record in the office of the Recorder of Deeds of Lake County on January 15, 1969.[1]

On January 15, 1969, the first meeting of shareholders of Scornavacco's Restaurant, Inc. was held and immediately thereafter the first meeting of directors was held. The shareholders approved the articles of incorporation as filed in the office of the Secretary of State and elected the first board of directors. The directors adopted by-laws, elected officers, adopted a corporate seal, approved the form of stock certificate and fixed a salary of $18,000 per year for each of the president and secretary. The directors also instructed the corporate secretary to issue two stock certificates, each representing 125 shares, to Anthony Scornavacco. The minutes of the meeting stated:

An appraisal had been obtained by Mr. Scornavacco indicating that the value of the furniture, fixtures and leasehold improvements equalled or exceeded the sum of Fifty Thousand ($50,000.00) Dollars. . . .

It was further declared in the minutes that Anthony Scornavacco's subscription for 250 shares for $25,000 had been paid by the transfer and conveyance to the corporation of the furniture, fixtures and leasehold improvements; and that the excess of the value of those assets over the $25,000 so paid would be represented by a demand note or notes for $25,000 executed and delivered by the corporation and constituting a loan.

Therefore, on January 15, 1969, the corporation received net assets valued at $25,000 and thereby satisfied Ill.Rev. Stats. ch. 32, § 157.50, which provides:

A corporation shall not transact any business or incur any indebtedness . . . until at least $1,000 has been paid in as consideration for the issuance of shares.

At the first directors' meeting on January 15, 1969, the directors also considered the existing lease on the restaurant premises, which was from Anthony Scornavacco's mother to him. The minutes stated:

The lease in question provides for the assignment by the lessee to any corporation formed for the purposes of

---

1. Under the Illinois Incorporation Act of 1872, § 4 provided that the certificate should be recorded in the country where the principal office of the company was located and that "upon the recording of the said copy the corporation shall be deemed fully organized and may proceed to business." Subsequent corporation acts provided that corporate existence should begin with the issuance of the certificate. Ill.Rev.Stats. ch. 32, § 157.49. The present Business Corporation Act provides as part of Section 157.48:

The certificate of incorporation, together with the duplicate original of the articles of incorporation affixed thereto by the Secretary of State, shall be returned to the incorporators or their representative and shall be filed for record within the time prescribed by this Act in the office of the recorder of deeds of the county in which the registered office of the corporation in this State is situated. The prescribed time is 15 days after mailing by the Secretary of State. Section 157.144.

the operation of the Scornavacco Restaurant. Consequently, Mr. Anthony Scornavacco had endorsed upon the lease his assignment thereof, and, in return, it was duly moved, seconded and passed that the corporation undertake and perform each and all of the covenants and obligations upon the lessee in said instrument, inclusive of the payment of rentals beginning upon date of January 1, 1969.

The lease was in fact assigned to "Scornavacco's Rest., Inc." and the assignment was signed by Anthony Scornavacco.

Finally, the directors at their first meeting established the Bank of Highwood as depository for the funds of the corporation. The Scornavaccos introduced evidence that the Bank of Highwood account had been established in 1964 in the name of "Scornavacco's Restaurant (Washington Gardens)" with Anthony Scornavacco as the sole signatory. Apparently this individual bank account was continued to be used as the restaurant's account. A substantial number of checks drawn on the account beginning in 1969 had the word "Inc." inked in, and a very substantial amount did not.

On January 15, 1969, "Scornavacco's Restaurant, Inc." applied for a City of Highwood liquor license. The Highwood Liquor Commission accepted the application (1) as a request to transfer the existing individual license to the corporation and such transfer was approved, and (2) as a corporate application for a new license beginning on May 1, 1969, which was granted. On July 21 or 22, 1969, the corporation applied for a State of Illinois liquor license, accompanied by a money order issued in the name of "Scornavacco's Restaurant, Inc."

The corporation applied for and received from Internal Revenue Service an employer's identification number. The application was dated July 21, 1969 and in answer to the question "Date you acquired or started business," Anthony Scornavacco as president of the corporation responded "1/13/69."

During 1969, the corporate taxpayer did not file any quarterly reports of FICA contributions or federal income tax withheld, but instead those reports were filed by Anthony Scornavacco as the individual proprietor of the restaurant. The corporation did not file any tax returns for 1969, but the income from the restaurant was reported on Schedule C (profit from business) of Anthony Scornavacco's individual income tax return for 1969.

A corporate application for certificate of registration under the Illinois Retailers' Occupation Tax Act states that the corporation was organized on January 13, 1969, but that the "first taxable sale was made under above ownership" on January 1, 1970. When Anthony Scornavacco was notified by Internal Revenue Service of non-receipt of tax returns from the former sole proprietorship, his tax consultant responded that the sole proprietorship had closed its business on December 30, 1969.

Finally, customers' accounts ledger and statement sheets were imprinted with the corporate name and entries were made in these documents during 1969.

After hearing the foregoing evidence, the district court found and concluded in part:

. . . Having listened to the arguments of the parties, and the pertinent aspects of the various exhibits that have been introduced, I find that Anthony and Armand Scornavacco incorporated some time early in the year 1969. They did many things of legal significance in the corporate name during that year; these things all involving the then existing and operating Scornavacco's Restaurant.

The evidence to the contrary—that is, the evidence suggesting that they were operating Scornavacco's Restaurant as a sole proprietorship and intending to do so is not compelling. The respondent cannot now escape the consequences of that corporate activity by saying, "I didn't really mean it."

I recognize that wholly owned, family corporations frequently operate much the same after incorporation as they do before; but, nonetheless, the legal benefits of incorporation are available to them and so, therefore, are the legal consequences of the corporation operative [sic].

I find, therefore, that the Scornavacco Restaurant was intended to, and did actually, function and operate as a corporate entity during the year 1969, particularly, after January 13, 1969, and can't escape the legal consequences of that corporate operation.

### III

In *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943), the Supreme Court held that the tax laws require taxation of the corporate entity if it engages in business activity. The Court said at 438–39, 63 S.Ct. at 1134:

The doctrine of corporate entity fills a useful purpose in business life. *Whether* the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or *to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity* (emphasis added and footnotes omitted).

■ Here the creator's personal or other convenience for establishing the corporation is undisclosed but the corporate entity was clearly and conclusively formed under Illinois law. The evidence overwhelmingly supports the district court's finding and conclusion that business activity in the form of operation of the restaurant business by the corporation followed its formation. The Scornavaccos' choice of taking the advantages of incorporation to do business requires the acceptance by them of the tax disadvantages of that choice. *Burnet v. Commonwealth Improvement Co.,* 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399 (1932).[2]

■ The shareholders of a closely held corporation created for some business purpose cannot demand that its existence be ignored for federal tax purposes. *Collins v. United States,* 386 F.Supp. 17, 19 (S.D.Ga.1974), affirmed, 514 F.2d 1282 (5th Cir. 1975). Individuals cannot adopt the corporate form for whatever benefits it may offer and seek to avoid the tax consequences. *Harrison Property Management Co. v. United States,* 475 F.2d 623, 626, 201 Ct.Cl. 77 (1973).

The Scornavaccos have contended that because they treated the restaurant business as a sole proprietorship in 1969 by not filing a corporate income tax return but instead by Anthony reporting the restaurant income in his individual return, that treatment should govern. They have relied upon *United States v. Theodore,* 347 F.Supp. 1070, 1072 (D.S.C. 1972), where the parties filed corporate tax returns and the court compelled them to comply with an I.R.S. summons. In that case, unlike this one, no articles of incorporation had been filed as required by state statute and the filing of the corporate tax returns constituted evidence of a *de facto* corporation or a corporation by estoppel. The court of appeals found the summons too broad and too vague to be enforced but agreed with the district court that a sole proprietorship holding itself out as a corporation estopped it "from denying the existence and viability of its corporate entity." *United States v. Theodore,* 479 F.2d 749, 753 (4th Cir. 1973).

---

**2.** When Judge Kiley, who served with such distinction on our court, was a Justice of the Appellate Court of Illinois, he noted: "There is no controversy about the rules that a corporation is a distinct entity; that a sole stockholder is not the owner of corporate property; and that generally one who has created a corporate entity will not be permitted to disregard it to gain an advantage, which under it would be lost." *Earp v. Schmitz,* 334 Ill.App. 382, 79 N.E.2d 637, 639 (1948).

The *Theodore* holding does not work in reverse. A sole proprietorship actually doing business through a corporation and also holding itself out as a corporation cannot avoid corporate tax liability by failing to file corporate tax returns. If such a result were possible, the tax liability of any corporate entity could be terminated by failure to file returns.

Unlike *Theodore,* the corporation here was completely and validly formed under Illinois law, and its carrying on of the restaurant business was manifested in several persuasive ways during the year 1969. *Moline Properties, Inc. v. Commissioner,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943); *National Carbide Corp. v. Commissioner,* 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949). Consequently, no privilege is available to defeat enforcement of the I.R.S. summons. *Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974).

We affirm the judgment of the district court enforcing and compelling obedience of the Internal Revenue Service summons.