Stephen BABIN; Betty Boehm Babin, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 93–1614.

United States Court of Appeals, Sixth Circuit.

Argued April 21, 1994.

Decided May 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied July 7, 1994.

J. Timothy Bender (argued and briefed), Joseph P. Alexander and David G. Lambert (briefed), Kadish & Bender, Cleveland, OH, for petitioners-appellants.

David L. Jordan, I.R.S., Office of Chief Counsel, Gary R. Allen, Acting Chief (briefed), Kenneth L. Greene (argued), Gilbert S. Rothenberg, Randolph L. Hutter, U.S. Dept. of Justice, Appellate Section Tax Div., Washington, DC, for respondent-appellee.

Before: MILBURN and GUY, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

MILBURN, Circuit Judge.

Petitioner C. Stephen Babin appeals the judgment of the Tax Court finding him liable for federal tax deficiencies for the year 1978, among others.[1] On appeal, the sole issue is whether the Tax Court erred in failing to increase the adjusted basis of petitioner's interest in a partnership under 26 U.S.C. § 705(a)(1)(A) by the amount of the discharge of indebtedness income that petitioner did not have to recognize by reason of the judicially created insolvency exception. For the reasons that follow, we affirm.

## I.

### A.

In 1974, the Lakewood Center Medical Construction Associates ("Partnership"), an Ohio limited partnership, was formed. Petitioner, one of two general partners of the Partnership, held a 51% interest in the income and loss of the Partnership and a 75% interest in the Partnership's liabilities. The other general partner and the six limited partners held the remaining interests of the Partnership. The Partnership's primary asset was a 70,000 square foot medical office building adjacent to Lakewood Hospital. Construction of the medical office building was financed by the Cleveland Trust Company ("Cleveland Trust"), which held both a first and second mortgage on the building and also debtor's certificates. All the debt held by Cleveland Trust was recourse as to the two general partners.

Upon the failure of the Partnership to maintain the debt service payments, Cleveland Trust instituted foreclosure proceedings on the medical building, and the Partnership filed a petition in April 1977 under Chapter XII of the Bankruptcy Act. During the bankruptcy proceedings, the Partnership agreed to sell all its assets to a third party for $2,850,000. In addition, the Partnership and Cleveland Trust discussed the settlement of the Partnership's debts. At the time, the Partnership was indebted to Cleveland Trust in the amount of $5,170,019.

---

* The Honorable William H. Timbers, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, sitting by designation.

1. Although the Tax Court determined that petitioner Betty Boehm Babin also was liable for certain deficiencies, the issue on appeal only concerns C. Stephen Babin. Accordingly, the term petitioner solely relates to C. Stephen Babin.

The Partnership and Cleveland Trust subsequently agreed to the resolution of the Partnership's debt. Under the settlement agreement, the Partnership agreed to pay Cleveland Trust $2,750,000 in full satisfaction of the two mortgages and the debtor's certificates. In return, Cleveland Trust agreed to forgive $2,420,019, the remaining portion of the debt owed by the Partnership. In January 1978, a bankruptcy court approved the settlement and dismissed the proceedings.

## B.

In April 1989, respondent Commissioner of Internal Revenue issued a notice of deficiency to petitioner for three tax years: 1978, 1979, and 1982. The notice informed petitioner of several determinations made by respondent, including the determination that petitioner must recognize an increased amount of income as a result of the transactions involving the Partnership and Cleveland Trust. As relevant to this appeal, respondent determined that the Partnership received a total of $5,270,019 from the sale of its assets and the discharge of its indebtedness; $100,000 from the sale proceeds from the third party and $5,170,019 from discharge of the indebtedness to Cleveland Trust. Respondent also determined that petitioner's share of this amount, $3,952,514 (75% of $5,270,019), exceeded the adjusted basis of petitioner's interest in the Partnership, $2,663,180, by $1,289,334. Accordingly, respondent determined that petitioner had to recognize $1,289,334 in capital gain. *See* 26 U.S.C. § 731(a). Because the year at issue in this case antedates the Tax Reform Act of 1986, our statutory references are to the Internal Revenue Code of 1954.

Petitioner thereafter filed a petition in the Tax Court challenging, among other things, the calculation with respect to capital gain. Petitioner argued that before respondent calculated capital gain, respondent should have increased the adjusted basis of petitioner's interest in the Partnership, pursuant to 26 U.S.C. § 705(a)(1)(A), by petitioner's distributive share of the income the Partnership realized upon the forgiveness by Cleveland Trust of the $2,420,019 owed by the Partnership. Had respondent increased petitioner's adjusted basis in the manner urged by petitioner, petitioner would have recognized little or no capital gain as opposed to recognizing $1,289,334 in capital gain as determined by respondent. The Tax Court, however, rejected petitioner's argument and affirmed respondent's calculations in this respect. This timely appeal followed.

## II.

■ Resolution of whether the Tax Court erred in failing to increase the adjusted basis of petitioner's interest in the Partnership pursuant to 26 U.S.C. § 705(a)(1)(A) is a question of law. *Estate of Newman v. Commissioner*, 934 F.2d 426, 434 (2d Cir.1991). Thus, we review the judgment of the Tax Court de novo. *North American Rayon Corp. v. Commissioner*, 12 F.3d 583, 586 (6th Cir.1993). In order to reach our conclusion, we must analyze several distinct portions of the Internal Revenue Code, each of which operate independently.

■ We begin with the rule that the discharge of a debt below face value accords the debtor an economic benefit functionally equivalent to income. This rule was first articulated by the Supreme Court in *United States v. Kirby Lumber Company*, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131 (1931). In that case, a corporation issued its own bonds for approximately $12,000 for which it received their par value. During the same year, the corporation purchased some of the bonds at less than par value. The difference in price was $137,521.30. Reasoning that "[a]s a result of its dealing [the corporation] made available $137,521.30 [of] assets previously offset by the obligation of bonds now extinct," the Supreme Court concluded that the corporation "realized within the year an accession to income." *Id.* at 3, 52 S.Ct. at 4. In 1954, Congress codified the ruling in *Kirby Lumber*, specifically providing that gross income includes "[i]ncome from discharge of indebtedness." 26 U.S.C. § 61(a)(12). Thus, in general, where a debt owed by a taxpayer is discharged, the difference between the face value of the debt and the amount paid in satisfaction of the debt is includable in the taxpayer's gross income under 26 U.S.C. § 61(a)(12).

■ Accompanying the discharge of indebtedness income rule, however, is a judicially created exception, commonly referred to as the "insolvency exception." Under the insolvency exception, "a debtor will not recognize income under section 61(a)(12) if he is insolvent following the discharge of indebtedness." *Gershkowitz v. Commissioner*, 88 T.C. 984, 1005, 1987 WL 49310 (1987) (citing *Dallas Transfer & Terminal Warehouse Co. v. Commissioner*, 70 F.2d 95 (5th Cir.1934) and *Astoria Marine Constr. Co. v. Commissioner*, 12 T.C. 798, 1949 WL 205 (1949)).

> The theory of this exception is that no accession to income has occurred if after the debt cancellation, the taxpayer remains insolvent since no assets have been freed. To the extent the cancellation renders the taxpayer solvent, however, he is deemed to have realized income in the amount by which his assets exceed his liabilities immediately after the cancellation.

*Estate of Delman v. Commissioner*, 73 T.C. 15, 32, 1979 WL 3693 (1979) (citations omitted); *see also* Jacob Mertens, Jr., *Mertens Law of Federal Taxation*, § 11.42 (1990). The insolvency exception, among other things, is premised on the belief that it is inequitable "to kick someone when he is down." 1 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts*, ¶ 6.4.1 at 6–27 (2d ed. 1989).

■ In addition to providing for the rules governing whether a partner realizes income under 26 U.S.C. § 61(a)(12) as a result of the discharge of indebtedness, the Internal Revenue Code also provides separate and distinct rules governing whether a partner recognizes capital gain under 26 U.S.C. § 731(a)(1) as a result of the discharge of indebtedness. Under the partnership provisions of the Internal Revenue Code, "a partner's interest in the partnership is itself a capital asset, subject to gain or loss like any other capital asset." *Stackhouse v. United States*, 441 F.2d 465, 467 (5th Cir. 1971). As relevant to this case, the calculation of capital gain requires the determination of two separate factors: (1) the amount of money, if any, distributed by the partnership to the partner; and (2) the adjusted basis of such partner's interest in the part-

nership immediately before the distribution. If the money distributed by the partnership to the partner exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, then the excess amount of money distributed must be recognized as capital gain. 26 U.S.C. § 731(a)(1). Section 705(a)(1)(A) is the relevant provision in this case to the determination of the adjusted basis of a partner's interest in the partnership.

■ Applying these principles, the Tax Court made two conclusions. First, it concluded that because petitioner was insolvent both before and after the discharge of the debt held by Cleveland Trust, the insolvency exception mandated that petitioner recognize no income under 26 U.S.C. § 61(a)(12) from the discharge of indebtedness income. Neither party argues on appeal that the Tax Court erred in this conclusion. Second, the Tax Court concluded that because petitioner was insolvent both before and after the discharge of the debt held by Cleveland Trust, and thus did not recognize income, petitioner was barred from increasing the adjusted basis of his interest in the Partnership under 26 U.S.C. § 705(a)(1)(A). Accordingly, the Tax Court determined that petitioner had to recognize capital gain. Whether the Tax Court erred in failing to increase the adjusted basis of petitioner's interest in the Partnership under 26 U.S.C. § 705(a)(1)(A) is the issue on appeal.

Section 705(a)(1)(A) provides that the adjusted basis of a partner's interest in a partnership shall be increased by the partner's "distributive share ... of ... taxable income of the partnership." In this case, petitioner argues that when Cleveland Trust forgave $2,420,019 of the debt the Partnership owed, that amount constituted "taxable income of the Partnership." Petitioner then argues that because he was a general partner holding 51% of the income of the Partnership, he received his "distributive share" of that taxable income of the Partnership; specifically, $1,234,210 (51% of $2,420,019). As a result, petitioner argues that under 26 U.S.C. § 705(a)(1)(A) he should be able to increase the adjusted basis of his interest in the Partnership by $1,234,210.

We disagree with petitioner and conclude that because petitioner was insolvent at the time the Partnership received $2,420,019 in income as a result of Cleveland Trust's agreement to forgive that amount, petitioner did not receive his distributive share of that taxable income of the Partnership. The unique nature of a partnership as it relates to the Internal Revenue Code was described by the Supreme Court in *United States v. Basye*, 410 U.S. 441, 93 S.Ct. 1080, 35 L.Ed.2d 412 (1973):

> Section 703 of the Internal Revenue Code of 1954, insofar as pertinent here, prescribes that "[t]he taxable income of a partnership shall be computed in the same manner as in the case of an individual." 26 U.S.C. § 703(a). Thus, while the partnership itself pays no taxes, 26 U.S.C. § 701, it must report the income it generates and such income must be calculated in largely the same manner as an individual computes his personal income. For this purpose, then, the partnership is regarded as an independently recognizable entity apart from the aggregate of its partners. Once its income is ascertained and reported, its existence may be disregarded since each partner must pay tax on a portion of the total income as if the partnership were merely an agent or conduit through which the income passed.

*Id.* at 448, 93 S.Ct. at 1085.

Under the framework provided in *Basye*, when Cleveland Trust forgave $2,420,019 of the debt the Partnership owed, the Partnership received that amount as discharge of indebtedness income. Because the Partnership was not a tax paying entity, however, the discharge of indebtedness income received by the Partnership was to pass through to each partner in proportion to each partner's distributive share of the income of the Partnership. But in this case, petitioner was insolvent both before and after the forgiveness of the $2,420,019. As a result, no taxable income passed through to petitioner as a result of the discharge of that debt. Since petitioner did not receive any taxable income, there was no distributive share of taxable income of the .Partnership within the meaning of 26 U.S.C. § 705(a)(1)(A) which

would have entitled petitioner to increase the adjusted basis of his interest in the Partnership. Accordingly, petitioner is not permitted to increase the adjusted basis of his interest in the Partnership.

Petitioner argues, however, that if he were not allowed to increase the adjusted basis of his interest in the Partnership under 26 U.S.C. § 705(a)(1)(A), he effectively would end up paying tax on the discharge of indebtedness income. Petitioner suggests that if he were required to pay tax on the discharge of indebtedness income, the insolvency exception would be rendered meaningless. To illustrate his point, petitioner sets forth three variations of the facts in this case and describes the applicable tax consequences. In each example, the hypothetical partner's adjusted basis in the partnership prior to the discharge of indebtedness is $2,663,180; the partner's distributive share of the partnership's discharge of indebtedness income is $1,234,210; and the partner's share of the partnership's discharged liabilities is $3,877,-514.

In petitioner's first example, the partner at issue is solvent as opposed to insolvent as in this case. Because the partner is solvent, when the partnership realizes $2,420,019 in discharge of indebtedness income due to the forgiveness of a debt in that amount, the partner cannot invoke the insolvency exception and thus realizes his distributive share of that amount under 26 U.S.C. § 61(a)(12). In petitioner's example, the distributive share of the partner is $1,234,210. Pursuant to 26 U.S.C. § 705(a)(1)(A), the partner must then increase the adjusted basis of his interest in the partnership by $1,234,210, thus increasing the adjusted basis from $2,663,180 to $3,897,390. Moreover, as noted by petitioner, the discharge in partnership liabilities not only generates discharge of indebtedness income but also results in a deemed distribution of money under 26 U.S.C. § 752(b) in the amount of the partner's share of the discharged liabilities, which in this hypothetical is $3,877,514. Pursuant to 26 U.S.C. § 733 and 26 U.S.C. § 705(a)(2), this deemed distribution reduces the partner's adjusted basis from $3,897,390 to $19,876. Consequently, the ultimate tax effect in this exam-

ple is that the partner pays tax on $1,234,210 related to the discharge of indebtedness income and the partner's adjusted basis has been reduced to $19,876. Under this example, no capital gain is recognized.

In petitioner's second example, the partner is insolvent but is allowed to increase his basis. Under this scenario, because the insolvency exception applies, the partner will not pay tax on his distributive share of the discharge of indebtedness income, $1,234,210. Pursuant to 26 U.S.C. § 705(a)(1)(A), however, the partner will still be able to increase the adjusted basis in his interest in the partnership by the discharge of indebtedness income. Thus, in this scenario, the adjusted basis would be $3,897,390, the same as in the first example. Pursuant to 26 U.S.C. § 752(b), the discharge of liabilities by the partnership results in a deemed distribution of money to the partner in the amount of $3,877,514. Under 26 U.S.C. § 733 and 26 U.S.C. § 705(a)(2), this deemed distribution of money reduces the partner's adjusted basis from $3,897,390 to $19,876. The ultimate tax effect in this example is that under the insolvency exception the partner has paid no tax on the discharge of indebtedness income and the partner has reduced his adjusted basis to $19,876. Additionally, as in the first example, no capital gain is recognized.

The third and final example also assumes that the partner is insolvent. Thus, as in the second example, the partner will not pay tax on his distributive share of the discharge of indebtedness income, $1,234,210, because of the insolvency exception. But unlike the second example, the partner is not permitted to increase his adjusted basis under 26 U.S.C. § 705(a)(1)(A). Accordingly, the partner's adjusted basis remains at $2,663,180. Pursuant to 26 U.S.C. § 752(b), the discharge of the partnership's liabilities results in a deemed distribution of money to the partner in the amount of $3,877,514. However, because there has been no adjusted basis increase, the taxpayer must recognize capital gain in the amount of $1,214,334 ($3,877,514 minus $2,663,180) under 26 U.S.C. § 731(a). Additionally, the partner's remaining adjusted basis will be zero. The ultimate tax effect in this example is that the partner ends up paying tax on $1,214,334 and his remaining adjusted basis has been reduced to zero.

Petitioner argues that this case should be resolved as set forth in the second example, not the third which respondent seeks to defend. Petitioner argues that if we were to accept respondent's argument and approve of the calculations set forth in example three, petitioner would be forced to pay tax on virtually the same amount as if he had been solvent. According to petitioner, this is not the result intended by the insolvency exception.

Petitioner's argument, however, overlooks the fact that in this case, as in example three, he is not paying tax on the discharge of indebtedness income, but rather, he is paying tax on the deemed distribution of money as a result of the decrease in the Partnership's liability. As evident in petitioner's own examples, the amount generated from the discharge of indebtedness and the amount generated from the deemed distribution of money as a result of that discharge require completely separate analyses. Thus, if petitioner were correct in arguing that he is allowed to increase the adjusted basis of his interest in the Partnership by the discharge of indebtedness income that he was not, and will never be, required to recognize and pay tax on, then not only will petitioner avoid the ordinary income tax on his share of the partnership's discharge of indebtedness income, but he will also avoid tax on the deemed distribution of money to him of his interest in the liabilities that he previously used to increase his adjusted basis. We refuse to sanction such a windfall to petitioner.

In urging us to conclude that the Tax Court erred in failing to increase the adjusted basis, petitioner relies on the following passages of the Tax Court decision in *Gershkowitz v. Commissioner*, 88 T.C. 984 (1987):

"In general, gross income includes income from the discharge of indebtedness. *Income realized* by a partnership on the discharge of indebtedness is passed through to each partner under section 702, and the partner's basis in his partnership interest is increased by his distributive share of *such income*. Under a judicially created exception to this rule, however, a

debtor will not *recognize* income under section 61(a)(12) if he is insolvent following the discharge of indebtedness."

\* \* \* \* \* \*

"Under section 61(a)(12), the [partnerships] *realized* income from the discharge of indebtedness when [the creditor] discharged the loans. This income was then passed through to the individual partners pursuant to section 702(a)(8)."

Reply Brief for Appellant at 3–4 (quoting *Gershkowitz*, 88 T.C. at 1005–06) (citations omitted) (emphasis added by petitioner). Based on these passages, petitioner argues that because discharge of indebtedness income realized by the Partnership upon the discharge of the Cleveland Trust debt was passed through to him, the adjusted basis of his interest in the Partnership should be increased by his distributive share of that income even though the insolvency exception may preclude him from ultimately recognizing that income.

We are unpersuaded by petitioner's selective reading of *Gershkowitz*. In *Gershkowitz*, the Tax Court was faced with whether to increase the adjusted bases of *solvent* partners, as opposed to an *insolvent* partner as in this case, where the partnerships at issue were insolvent after the discharge of indebtedness. In the course of setting forth the applicable Internal Revenue Code provisions, the Tax Court acknowledged that, as a general rule, income realized by a partnership on the discharge of indebtedness is passed through to each partner and that under 26 U.S.C. § 705(a)(1), the partner's adjusted basis is increased by his distributive share of that discharge of indebtedness income. However, these statements, upon which petitioner relies, do not constitute the holding of the Tax Court. Instead, the holding of the Tax Court appears later in the opinion where the Tax Court concluded that because each partner was solvent at the time the partnerships' debts were discharged, each of the partners were required to recognize the discharge of indebtedness income and correspondingly increase their adjusted bases under 26 U.S.C. § 705(a)(1). *Gershkowitz*, 88 T.C. at 1009.

Thus, contrary to petitioner's suggestion, the Tax Court in *Gershkowitz* did not hold that the partners were required to increase their adjusted bases simply because the partnership realized discharge of indebtedness income which was passed down to the partners. Rather, in reaching its conclusion, the Tax Court found it crucial that the partners were solvent, thereby rendering the insolvency exception inapplicable. Accordingly, we decline to read *Gershkowitz* in the manner suggested by petitioner.

In further support of his position, petitioner relies on Revenue Ruling 71–301, 1971–2 C.B. 256. In that revenue ruling, the Internal Revenue Service, among other things, considered the application of 26 U.S.C. § 731(a) with respect to the discharge of a partnership and its partners from indebtedness under section 14 of the Bankruptcy Act. Although it determined that the distribution of money by the partnership to the partner caused by the discharge exceeded the adjusted basis of the partner's interest in the partnership immediately prior to distribution, the IRS concluded that no gain was recognized by the partner because the partner was insolvent after the discharge. Petitioner argues that based on the conclusion in Rev.Rul. 71–301, he likewise should not be required to recognize gain in this case because he was insolvent after the discharge of the Cleveland Trust debt.

We decline to apply the reasoning of Rev. Rul. 71–301 to the facts in this case. Revenue rulings are not binding on this court. *Foil v. Commissioner*, 920 F.2d 1196, 1201 (5th Cir.1990). Nor are revenue rulings "entitled to the deference accorded a statute or a Treasury Regulation." *Threlkeld v. Commissioner*, 848 F.2d 81, 84 (6th Cir.1988). But because revenue rulings express the studied view of the IRS, whose duty is to carry out the provisions of the Internal Revenue Code, they are entitled to some deference. *CenTra, Inc. v. United States*, 953 F.2d 1051, 1056 (6th Cir.1992). However, we need not accord a revenue ruling any deference, where, as here, the revenue ruling fails to address the relevant issue on appeal. Rev.Rul. 71–301 concluded that 26 U.S.C. § 731(a), the provision providing for the rec-

ognition of capital gain, is not applicable when partnership liabilities were discharged in bankruptcy, but it made no statement as to whether the partners were entitled to increase the adjusted basis of their interests in the partnership as a result of the discharge of indebtedness income, the precise issue in this case. Petitioner apparently recognizes the distinguishing element of the revenue ruling to this case by only arguing that in Rev.Rul. 71–301, "[t]he Internal Revenue Service has ... considered a situation *substantially similar* to that involving [petitioner]." Brief for Appellant at 27 (emphasis added).

Finally, petitioner argues that had he owned the Partnership assets as a sole proprietor or as a co-tenant and had he engaged in the same transactions as the Partnership, he would not have recognized any income as a result of the discharge of the Cleveland Trust debt. Relying on the principle that "the ideal mode of taxing partnership earnings is to tax each partner as though he were directly conducting his proportionate share of the partnership business," Reply Brief for Appellant at 21 (quotation marks and citations omitted), petitioner argues that if we were to adopt his position, insolvent partners would merely be placed in the same tax position as if the partnership activities had been conducted in a sole proprietorship or held as a tenancy in common. Accordingly, petitioner argues that his argument should prevail because there should be no material distinction in the tax treatment that results from the discharge of the Cleveland Trust debt simply because of the form he chose to hold the property.

We refuse to speculate as to the tax implications petitioner would have faced had he held the Partnership assets as a sole proprietor, as a tenant in common, or, for that matter, in any other type of relationship. When taxpayers select a particular form to hold property, they may not enjoy the tax benefits offered by that form and at the same time seek to avoid the adverse tax consequences. *United States v. Scornavacco's Restaurant, Inc.*, 528 F.2d 19, 23 (7th Cir. 1975). Thus, given his choice to hold property in a partnership, petitioner is bound by the provisions in the Internal Revenue Code which govern such entities.

### III.

For the reasons stated, the judgment of the Tax Court is AFFIRMED.