T.C. Memo. 1998-117

UNITED STATES TAX COURT

ARLAN L. ROWER AND SANDRA M. HOWARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20045-95.                    Filed March 23, 1998.

Arlan L. Rower, pro se.

<u>Mark A. Weiner</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:  Respondent determined a deficiency of $9,046
in, and an accuracy-related penalty of $1,808 on, petitioners'
Federal income tax for 1993.

The issues for decision are:

(1)  Whether petitioners are entitled for 1993 to deduct a
net loss from an activity that they reported in Schedule C of

their Federal income tax return (return) for that year. We hold that they are not.

(2) Whether petitioners are entitled for 1993 to deduct a loss that they sustained on the sale of an automobile. We hold that they are not.

(3) Whether petitioners are entitled for 1993 to a casualty loss deduction in the amount of $11,509. We hold that they are not.

(4) Whether petitioners are liable for 1993 for the accuracy-related penalty under section 6662(a).[1] We hold that they are.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein. Petitioners resided in North Hollywood, California, at the time they filed the petition in this case. All references to petitioner in the singular are to Arlan L. Rower.

During 1993, petitioner earned $55,464[2] as a jet airplane mechanic employed by American Airlines, and petitioner Sandra L. Howard (Ms. Howard) earned $32,611 as a secretary.

---

[1] All section references are to the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] All dollar amounts are rounded to the nearest dollar.

Petitioner's Automobile Repair Activity

During 1984, petitioner was certified by the Federal Aviation Administration as qualified to exercise the privileges of mechanic for airframes and powerplants. On June 30, 1985, petitioner was certified as competent by the National Institute for Automotive Service Excellence (NIASE) in the service areas of "engine repair", "front end", and "brakes". Petitioner allowed his NIASE certification (1) in the service areas of "front end" and "brakes" to expire in July 1989 and (2) in the service area of "engine repair" to expire in July 1990.

Petitioner repaired cars in a garage located at his residence (automobile repair activity) for an undisclosed number of years before 1993, the year at issue, as well as during that year and 1994 and 1995. Prior to 1992, petitioner repaired automobiles for Leon Goldberg (Mr. Goldberg), his brother's father-in-law, but he did not charge Mr. Goldberg for that work. Beginning in 1992, petitioner informed Mr. Goldberg that he intended to begin charging him for any automobile repair work that he did for him at the rate of between $20 and $25 an hour for labor. During 1992 and 1993, petitioner repaired two cars for Mr. Goldberg for which he billed him for his labor, although Mr. Goldberg usually purchased any parts that petitioner needed in order to make those repairs. Petitioner also did repair work during 1992 and 1993 on

the car of his niece, Crystal Kahn (Ms. Kahn), for which he charged her.

On February 19, 1988, Ms. Howard purchased a 1985 Ford Thunderbird automobile (Thunderbird) for $7,250. During 1991, petitioner purchased a 1985 Ferrari automobile (Ferrari) for $61,000, which he sold for $45,000 on February 4, 1993. Throughout the period during which petitioner owned the Ferrari, he made repairs on it and kept it in good working condition.

Since sometime around 1990 through the time of the trial in this case, John Grenville-Jones (Mr. Grenville-Jones), who has a bachelor's degree in engineering and electronics and a master's degree in electronic engineering, was petitioners' return preparer. Mr. Grenville-Jones prepared, inter alia, petitioners' 1991, 1992, and 1993 returns, as well as an amended return for 1993.

In Schedule C, Profit or Loss from Business (Schedule C), of petitioners' 1992 return, which was the first Schedule C filed for petitioner's automobile repair activity, petitioners claimed that that activity constituted a business. In that schedule, petitioners reported gross receipts of $3,470, cost of goods sold of $250, total expenses of $21,460, and a net loss of $18,240. Included in the $21,460 of total expenses reported in petitioners' 1992 Schedule C was depreciation of $2,760 with respect to petitioner's Ferrari.

Mr. Grenville-Jones relied on Internal Revenue Service (IRS) Publication 334, Tax Guide for Small Business (Publication 334), to prepare petitioners' 1993 Schedule C relating to petitioner's automobile repair activity. In that schedule, petitioners reported gross receipts of $2,100, total expenses of $23,358, and a net loss of $21,258. Included in the $23,358 of total expenses reported in petitioners' 1993 Schedule C was depreciation of $540 with respect to Ms. Howard's Thunderbird. Petitioners also attached Form 4797, Sales of Business Property (Form 4797), to their 1993 return. In that form, petitioners claimed a loss of $13,010 on petitioner's Ferrari that they calculated by reducing the loss realized on the sale of that automobile (i.e., $16,000) by the depreciation that petitioners claimed with respect to it in their 1992 Schedule C and that they claim was allowable for January 1993. Petitioners reported that $13,010 loss as a long-term capital loss in their 1993 Schedule D, Capital Gains and Losses (1993 Schedule D). Petitioners did not report any other capital gains or losses in their 1993 Schedule D. Because of the $3,000 limitation imposed by section 1211(b) for each taxable year on the amount of net capital loss by which an individual may reduce income, petitioners reduced the income reported in their 1993 return by $3,000 of the claimed long-term capital loss reported in their 1993 Schedule D.

During 1996, Mr. Grenville-Jones prepared for petitioners an amended return for 1993 (1993 amended return) that they submitted to the IRS on November 27, 1996.  In Schedule C of that amended return relating to petitioner's automobile repair activity (1993 amended Schedule C), petitioners reported gross receipts of $2,100, total expenses of $14,730, and a net loss of $12,630. The total expenses claimed in the 1993 amended Schedule C con- sisted of the following items:

| Expense | Amount |
| --- | --- |
| Advertising | $280 |
| Car and Truck Expenses | 2,160 |
| Depreciation | 3,455 |
| Interest | 2,269 |
| Other Interest | 645 |
| Legal and Professional Services | 192 |
| Office Expense | 105 |
| Repairs and Maintenance | 60 |
| Supplies | 2,366 |
| Travel | 910 |
| Meals and Entertainment | 362 |
| Utilities | 423 |
| Other Expenses[3] | 1,505 |

Petitioners also attached a Form 4797 to their 1993 amended return, which was identical to the Form 4797 that they attached to their 1993 return and in which they claimed a $13,010 loss from the sale of petitioner's Ferrari.  Petitioners asserted in

---

[3]  Included within the "Other Expenses" category in petitioners' 1993 amended Schedule C were the following claimed expenses: "telephone" of $980; "postage" of $63; "dry cleaning" of $29; "publications" of $181; "bank charges" of $150; and "membership prof associations" of $100.

an attachment to their 1993 amended return that the $13,010 loss that they were claiming in that Form 4797 was reported on line 15, Other gains or (losses), of their 1993 return, rather than in their 1993 Schedule D, as reported in their original 1993 return.

For 1994 and 1995, petitioners reported petitioner's automobile repair activity as a partnership and claimed losses from that partnership in the amounts of $13,013 and $6,161, respectively.

Petitioners' Claimed Casualty Loss

During 1994, petitioners received $3,067 from the Federal Emergency Management Agency stemming from a claim due to an earthquake that occurred during 1994 (Northridge earthquake). At the time of that earthquake, petitioners were not covered by insurance for earthquake damage.

During March 1994, petitioners received two estimates of the cost of repairs to their house, one from Steven Berkus Construction for $15,900 (Berkus estimate) and one from Ernesto Laurel (Mr. Laurel) for $16,300 (Laurel estimate). Each of those estimates indicated that it was for repairs due to earthquake damage. During 1994, petitioners purchased $561 worth of supplies and hardware, and they paid Mr. Laurel $655.

Although the Northridge earthquake occurred during 1994, pursuant to section 165(i)(1), petitioners claimed a casualty loss deduction of $11,371 in Form 4684, Casualties and Thefts

(Form 4684), of their 1993 return. In calculating that deduction, petitioners (1) totaled claimed casualty losses of (a) $15,560 attributable to "Quake damage to single family home" and (b) $2,420 attributable to "Broken water pipes", "water damage to living room", and "Broken plates glass wall crystal TV's, VCR, radio", (2) reduced that total by $100, as required by section 165(h)(1), and (3) reduced that figure by 10 percent of the adjusted gross income that they reported in their 1993 return, as required by section 165(h)(2). Petitioners reported their claimed $11,371 casualty loss deduction in Schedule A, Itemized Deductions (Schedule A), of their 1993 return.

Petitioners claimed a casualty loss deduction of $11,509 in Form 4684 and Schedule A of their 1993 amended return. Petitioners calculated that deduction in the same manner in which they calculated the casualty loss deduction that they claimed in their 1993 original return. However, the amount of the casualty loss deduction attributable to the Northridge earthquake that petitioners claimed in their 1993 amended return was greater than the amount of the deduction attributable to that earthquake that they claimed in their original return for 1993 because the adjusted gross income that they reported in their 1993 amended return was less than the amount of gross income reported in their original return for that year.

Notice of Deficiency

On August 21, 1995, prior to the date on which petitioners submitted their 1993 amended return to the IRS, respondent issued a notice of deficiency (notice) to petitioners for their taxable year 1993. Respondent determined in the notice that petitioners are entitled to an amount of Schedule C expenses that equals the amount of gross receipts (i.e., $2,100) that petitioners reported in that schedule and that they are not entitled to the balance of those expenses (i.e., $21,258). The bases for respondent's determination in the notice with respect to the expenses petitioners claimed in their 1993 Schedule C were that (1) petitioners have not shown that those expenses were paid or incurred during 1993, (2) petitioners have not demonstrated that those expenses are ordinary and necessary to petitioner's automobile repair activity during that year, and (3) petitioner was not engaged during 1993 in his automobile repair activity for profit.

Respondent further determined in the notice that petitioners are not entitled to the $3,000 capital loss attributable to the sale of petitioner's Ferrari that petitioners claimed in their 1993 Schedule D.

In addition, respondent determined in the notice that petitioners are not entitled to the $11,371 casualty loss deduction that petitioners claimed in their 1993 Schedule A.

Respondent also determined in the notice that petitioners are liable for 1993 for the accuracy-related penalty under section 6662(a).

## OPINION

Petitioners bear the burden of proving that respondent's determinations in the notice are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and the taxpayer has the burden of showing his or her entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Petitioner's Automobile Repair Activity

### Petitioners' Claimed Schedule C Expenses

Petitioners argue that they are entitled to deduct the $12,630 net loss that they claimed in their 1993 amended Schedule C. Respondent counters that petitioners are not entitled to deduct a net loss with respect to petitioner's automobile repair activity because, inter alia, petitioner was not engaged in his automobile repair activity for profit.

Before turning to the arguments of the parties, we shall address petitioners' contention that respondent has the burden of proof with respect to petitioner's profit objective under section 183. Although not altogether clear, we construe their argument to be based on section 183(d). As pertinent here, section 183(d)

generally creates a presumption that a taxpayer is engaged in an activity for profit if the gross income that such taxpayer derives from that activity exceeds the deductions of that tax-payer that are attributable to that activity for 3 out of 5 consecutive taxable years. However, section 183(d) does not apply to petitioners because there is no evidence in the record to show that petitioner's automobile repair activity ever satisfied that provision.[4]

We turn now to petitioners' argument that petitioner engaged in his automobile repair activity with the requisite profit objective under section 183 and that therefore petitioners are entitled to deduct the Schedule C loss that they are claiming for 1993. Section 183 allows only specified deductions unless an activity is engaged in for profit. Section 183(c) defines an

[4] We note that sec. 12.9(a) and (b), Temporary Income Tax Regs., 39 Fed. Reg. 9947 (Mar. 15, 1974), generally permits a taxpayer to elect to postpone a determination by respondent with respect to whether the presumption described in sec. 183(d) applies to an activity of such taxpayer until after the first 5 taxable years during which that taxpayer is engaged in any such activity. Such an election generally must be made within the first 3 years after the due date of such taxpayer's return, without regard to extensions, but not later than 60 days after such taxpayer receives written notice from a District Director that that district director proposes to disallow deductions attributable to an activity. Sec. 12.9(c), Temporary Income Tax Regs., 39 Fed. Reg. 9948 (Mar. 15, 1974). Petitioners appear to have prepared such an election, but they have failed to show that they filed it with respondent. Indeed, they admit that Mr. Grenville-Jones retained that election in his files.

activity not engaged in for profit as an activity other than one with respect to which deductions are allowable under section 162 or under paragraphs (1) or (2) of section 212.  An activity engaged in for profit is one in which the taxpayer has an actual and honest objective of making a profit, Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983), although that profit expectation need not be reasonable, Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); sec. 1.183-2(a), Income Tax Regs.

The determination of a taxpayer's profit objective requires a consideration of all the surrounding facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986); sec. 1.183-2(b), Income Tax Regs.  Although the purpose of the inquiry is to ascertain the taxpayer's subjective intent, greater weight is given to objective facts than to self-serving statements of intent.  Beck v. Commissioner, 85 T.C. 557, 570 (1985); sec. 1.183-2(a), Income Tax Regs.

In conducting the profit objective analysis, courts have relied on a nonexclusive list of nine factors enumerated in the regulations under section 183.  See Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 727 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Elliott v. Commissioner, 90 T.C. 960, 970-971 (1988), affd. without published

opinion 899 F.2d 18 (9th Cir. 1990).  No single factor is deter-
minative of the issue, however.  Sec. 1.183-2(b), Income Tax
Regs.  The nine factors set forth under section 1.183-2(b),
Income Tax Regs., are:  (1) The manner in which the taxpayer
carries on the activity; (2) the expertise of the taxpayer or his
or her advisers; (3) the time and effort expended by the taxpayer
in carrying on the activity; (4) the expectation that the assets
used in the activity may appreciate in value; (5) the success of
the taxpayer in carrying on other similar or dissimilar activi-
ties; (6) the taxpayer's history of income or losses with respect
to the activity; (7) the amount of occasional profits, if any,
that are earned; (8) the financial status of the taxpayer; and
(9) the elements of personal pleasure or recreation involved in
the activity.

We take this opportunity to note that petitioner did not
testify at the trial in this case.  We presume that if he had
testified truthfully, his testimony would not have been favorable
to petitioners' position herein.  See McKay v. Commissioner, 886
F.2d 1237 (9th Cir. 1989), affg. 89 T.C. 1063 (1987); Cohen v.
Commissioner, 9 T.C. 1156, 1162 (1947), affd. 176 F.2d 394 (10th
Cir. 1949); Wichita Terminal Elevator Co. v. Commissioner, 6 T.C.
1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  Indeed,
petitioners stated on brief that "petitioner did not go to the

stand--as he was scared of committing perjury--and being exposed as a blatant liar."

With respect to whether petitioner had the requisite profit objective under section 183 for his automobile repair activity, petitioners offered, inter alia, the following evidence:  (1) The testimony of Ms. Kahn, who is related to petitioner; (2) the testimony of Mr. Goldberg, who has a family relationship with petitioner; (3) a receipt book that reflected cash that petitioners received during 1993 (1993 receipt book); (4) computer-generated lists of petitioners' alleged receipts, assets and asset values, gasoline expenses, and supplies for 1992 (1992 computer lists) and their alleged assets and asset values for 1993 (1993 computer list) that were copied from a document entitled "original business ledger"; and (5) a log that appears to reflect miles traveled on certain trips in petitioner's Ferrari during 1992 and in Ms. Howard's Thunderbird during 1993 that are alleged to be business trips (automobile log).

Mr. Goldberg and Ms. Kahn each testified that during 1993 petitioner charged them for repairs that he made to their respective automobiles.  However, their testimony does not establish, and there is no other evidence in the record to show, whether the amount that petitioner charged them was enough to allow petitioner to earn a profit from the automobile repair work that he

did for them.  Indeed, Ms. Kahn could not recall how much petitioner charged her for automobile repairs.  Consequently, we shall not rely on Mr. Goldberg's or Ms. Kahn's testimony to establish that petitioner engaged in his automobile repair activity for profit within the meaning of section 183.

With respect to the 1993 receipt book, the 1992 and 1993 computer lists, and the automobile log, petitioner failed to testify about those documents, and there is no other evidence in the record to show when those documents were prepared and whether those documents are complete and accurate.  Accordingly, on the instant record, we shall not rely on any of those documents in determining whether petitioner was engaged in his automobile repair activity for profit within the meaning of section 183.

Nor is there any evidence in the record with respect to how many hours petitioner devoted to his automobile repair activity. Based on the salary of $55,464 that petitioner earned during 1993 from American Airlines, it appears that he worked full time for that company.  It seems to us that petitioner could not have spent a significant amount of time on his automobile repair activity during 1993 if he was employed full time by American Airlines during that year.

In further support of petitioners' argument that petitioner had the requisite profit objective under section 183 with respect

to petitioner's automobile repair activity, petitioners contend that there was a "profit trend" with respect to that activity. Although not altogether clear, it appears that petitioners base that contention on the premise that the amount of the losses that petitioners claimed for 1992, 1993, 1994, and 1995 decreased from year to year.  We note initially that the respective losses that petitioners claimed for 1994 and 1995 represented petitioner's allocable share of certain partnership losses, which presumably were less than the total losses for that partnership.  More importantly, we reject petitioners' contention that the losses which they claimed for the years 1992, 1993, 1994, and 1995 establish a "profit trend" for petitioner's automobile repair activity.

Based on our review of the entire record before us, we find that petitioners have failed to demonstrate that petitioner was engaged in his automobile repair activity with an actual and honest objective of making a profit.  The objective facts established by that record indicate that most of the factors enumerated in the regulations under section 183 favor respondent. We further find based on the present record that petitioners have failed to prove that the expenses that they claimed in their 1993 Schedule C and their 1993 amended Schedule C (1) were paid or incurred during 1993 and/or (2) were ordinary and necessary to

petitioner's automobile repair activity during that year. Accordingly, we sustain respondent's determination in the notice that for 1993 petitioners are not entitled to deduct the net loss that they claimed in their 1993 Schedule C with respect to petitioner's automobile repair activity, and we reject petitioners' contention that they are entitled to deduct the net loss that they claimed in their 1993 amended Schedule C.[5]

Petitioners' Claimed Section 1231 Loss

Petitioners contend that they are entitled to an ordinary loss deduction under section 1231 for 1993 for the loss that they realized on the sale of petitioner's Ferrari. Respondent contends that petitioners are not entitled to that deduction because they have failed to show that they used that automobile in connection with a trade or business.

Pursuant to section 1231(a)(1), if the section 1231 gain exceeds the section 1231 loss, that gain and loss are treated as long-term capital gain and loss, respectively. Pursuant to section 1231(a)(2), if the section 1231 loss exceeds the section

---

[5] Petitioners offered into evidence a document entitled "Profit Intent Test - The Nine Factors". In that document, petitioners allege certain facts relating to petitioner and his automobile repair activity that are not established by the record in this case. We have not relied on that self-serving document as evidence in support of any of the facts that are alleged in that document and that are not otherwise supported by the record in this case.

1231 gain, that loss and gain are treated as ordinary loss and gain, respectively.  As pertinent here, the terms "section 1231 gain" and "section 1231 loss" are defined to include any gain and loss, respectively, that is recognized on the sale or exchange of property used in a trade or business.  Sec. 1231(a)(3).  As relevant here, section 1231(b)(1) generally defines the term "property used in the trade or business" to include property used in the trade or business of a character that is subject to the allowance for depreciation under section 167 and that is held for more than one year.  As pertinent here, section 167(a) permits a depreciation deduction for property that is used in a trade or business.

We have found that petitioners have failed to establish that during 1993 petitioner engaged in his automobile repair activity with the requisite profit objective under section 183.  On the record before us, we find that petitioners have failed to show that petitioner's Ferrari was used in a trade or business.  We sustain respondent's determination in the notice that for 1993 petitioners are not entitled to a $3,000 capital loss deduction for the loss that they realized on the sale of petitioner's Ferrari,[6] and we reject petitioners' contention that they are

---

[6]  Mr. Grenville-Jones testified that Ferrari automobiles generally appreciate in value, particularly where the owner keeps
(continued...)

entitled for that year to an ordinary loss deduction of $13,010 under section 1231 with respect to that sale.

Petitioner's Claimed Casualty Loss Deduction

Petitioners contend that, pursuant to section 165(a) and (i)(1),[7] they are entitled for 1993 to a casualty loss deduction of $11,509, which is the amount they claimed in their 1993 amended return. Although respondent concedes that petitioners had a casualty loss of $1,216[8] within the meaning of section 165(c)(3), respondent contends that petitioners are not entitled to deduct that loss because of the limitation in section 165(h).[9]

---

[6](...continued)
that automobile in good working condition, as petitioner did. Petitioners appear to make the same contention on brief. We are unwilling to rely on Mr. Grenville-Jones' testimony, or petitioners' contention on brief, for petitioners as establishing that petitioner intended to acquire and/or hold petitioner's Ferrari for profit.

[7] Sec. 165(i) permits a taxpayer to take a deduction for a loss attributable to a disaster occurring in an area that is determined by the President of the United States to warrant assistance by the Federal Government under the Disaster Relief and Emergency Assistance Amendments of 1988 for the taxable year immediately preceding the taxable year in which the disaster occurred.

[8] The $1,216 casualty loss which respondent concedes petitioners incurred for 1993 consists of $561 worth of supplies and hardware that petitioners purchased during 1994 and $655 that petitioners paid to Mr. Laurel during that year.

[9] Sec. 165(h) limits the amount of a deduction for a casualty loss attributable to property that is not used in a trade or business or for the production of income (personal casualty
(continued...)

Under section 165(a) and (c)(3), an individual is permitted a deduction for a loss that arises from fire, storm, shipwreck, or other casualty, or from theft. As pertinent here, the deductible amount of a loss attributable to any such casualty generally is equal to the fair market value of the damaged property before the casualty reduced by the fair market value of the property after the casualty, sec. 1.165-7(b)(1)(i), Income Tax Regs., and those fair market values are generally to be determined by competent appraisal, sec. 1.165-7(a)(1)(i), Income Tax Regs. The cost of repairs to the property that is damaged as a result of a casualty is acceptable as evidence of the loss in the value of the property if the taxpayer shows: (a) The repairs are necessary to restore the property to its condition immediately before the casualty; (b) the amount spent for such repairs is not excessive; (c) the repairs do not care for more than the damage suffered; and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immedi-

---

[9](...continued)
loss). As pertinent here, sec. 165(h)(1) permits a deduction only to the extent that a personal casualty loss exceeds $100, and sec. 165(h)(2) permits a deduction for such a loss only to the extent that it exceeds 10 percent of the adjusted gross income of the taxpayer claiming the personal casualty loss. In the instant case, the $1,216 casualty loss that respondent concedes petitioners incurred, reduced by $100, does not exceed 10 percent of the adjusted gross income that petitioners reported in their 1993 return or their 1993 amended return.

ately before the casualty.  Sec. 1.165-7(a)(2)(ii), Income Tax Regs.

In order to substantiate their claimed casualty loss deduction for damage to their house from the 1994 Northridge earthquake, petitioners rely on the Berkus estimate and the Laurel estimate.  Petitioners contend that the Berkus estimate, which was for $15,900, shows the decrease in fair market value to petitioners' house as a result of the 1994 Northridge earthquake.  We disagree.  This Court has held that section 1.165-7(a)(2)(ii), Income Tax Regs., "contemplates actual repairs and expenditures, not just estimates", Farber v. Commissioner, 57 T.C. 714, 719 (1972), and that the use of estimates as evidence of the amount of a casualty loss is unacceptable.  Id.; see Lamphere v. Commissioner, 70 T.C. 391, 396 (1978).  Consequently, we shall not rely on the Berkus estimate or the Laurel estimate as establishing the decrease, if any, in the fair market value of petitioners' house as a result of the 1994 Northridge earthquake.

In order to provide further support for petitioners' claimed casualty loss deduction, petitioners offered (1) a receipt from Circuit City Stores, dated April 22, 1995, for the purchase of a television and (2) another receipt from Circuit City Stores, dated July 1, 1995, for the purchase of a television base, a video cassette recorder, and a television.  Petitioners contend

that those receipts represent the replacement value of certain of their personal property that was destroyed as a result of the 1994 Northridge earthquake.  However, there is no evidence in the record showing that two televisions, a television base, and a video cassette recorder were destroyed in the 1994 Northridge earthquake or that the purchases represented by the receipts from Circuit City Stores constituted replacement of such alleged destroyed property.  On the instant record, we find that petitioners have failed to establish that the 1994 Northridge earthquake destroyed two televisions, a television base, and a video cassette recorder.

Based on the entire record before us, we find that petitioners have failed to show that they are entitled for 1993 to a casualty loss deduction.  Consequently, we sustain respondent's determination disallowing the casualty loss deduction that petitioners claimed in their 1993 return, and we reject petitioners' contention that they are entitled to the casualty loss deduction that they claimed in their 1993 amended return.

Section 6662(a)

Respondent determined that petitioners are liable for 1993 for the accuracy-related penalty under section 6662(a) because the underpayment of income tax for that year was attributable to negligence.  Petitioners contend that they have demonstrated that

they "took great care in keeping records" and that they have shown that all of the deductions that respondent disallowed in the notice are "legal, justified, and proven." In addition, Mr. Grenville-Jones, who signed petitioners' 1993 return as tax preparer, testified at trial, and it appears that petitioners may be contending that they did not act negligently in filing that return because they relied on Mr. Grenville-Jones.

The accuracy-related penalty is equal to 20 percent of the portion of an underpayment to which section 6662 applies. Sec. 6662(a). Section 6662(b)(1) provides that section 6662 applies to any underpayment attributable to negligence or disregard of rules or regulations.

Negligence is defined as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Under certain circumstances, a taxpayer may avoid the accuracy-related penalty for negligence by showing that he or she reasonably relied on the advice of a competent professional. Sec. 1.6664-4(b)(1), Income Tax Regs.; see sec. 6664(c); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). However, a taxpayer bears the responsibility for any negligent errors of his or her professional adviser. See Ameri-

can Properties, Inc. v. Commissioner, 28 T.C. 1100, 1116-1117 (1957), affd. per curiam 262 F.2d 150 (9th Cir. 1958). Reliance on a professional adviser, standing alone, is not an absolute defense to negligence; it is only one factor to be considered. Freytag v. Commissioner, supra at 888. In order for reliance on a professional adviser to excuse a taxpayer from the accuracy-related penalty for negligence, the taxpayer must establish that the professional adviser on whom he or she relied had the expertise and knowledge of the relevant facts to provide informed advice on the subject matter. See id.

Contrary to petitioners' contention that they have shown that they "took great care in keeping records", we have found that there is no evidence in the record to establish (1) when any documents that are part of the record and that are, or purport to be, petitioners' records were prepared and (2) whether any such documents are complete and accurate. With respect to petitioners' contention that they have shown that all of the deductions that respondent disallowed in the notice are "legal, justified, and proven", we have found that they have not established that they are entitled to those deductions.

With respect to any contention by petitioners that they should not be liable under section 6662(a) because they relied on Mr. Grenville-Jones, who prepared their 1993 return (as well as

their 1993 amended return), Mr. Grenville-Jones testified that petitioners provided him with, inter alia, (1) certain documentation with respect to the alleged business use of petitioner's Ferrari; (2) the 1993 receipt book; (3) a ledger that contained a list of the equipment that petitioner claimed to have used in his automobile repair activity and the estimated values of that equipment; (4) certain receipts; (5) three estimates related to the 1994 Northridge earthquake; and (6) a list of property that petitioners alleged was damaged in the 1994 earthquake.  We note initially that although Mr. Grenville-Jones testified about certain documents that petitioners provided to him, not all of those documents are in the record.  With respect to those documents about which Mr. Grenville-Jones testified and which are in the record, petitioners did not testify, and we do not know, when those documents were prepared or whether they are complete and accurate.  We have found that petitioners have not established through those documents that they are entitled to the deductions that they claim.

It is also significant to any contention by petitioners that they are not liable under section 6662(a) because they relied on Mr. Grenville-Jones that Mr. Grenville-Jones testified that he has a bachelor's degree in engineering and electronics and a master's degree in electronic engineering.  In addition, although

we do not accept the changes in petitioners' 1993 amended return, by submitting that amended return, petitioners and Mr. Grenville-Jones concede that petitioners' original return for that year is in error. We are unable to find on the instant record that Mr. Grenville-Jones had the expertise[10] and knowledge of the relevant

---

[10] To illustrate Mr. Grenville-Jones' lack of expertise with respect to the preparation of petitioners' 1993 return, Mr. Grenville-Jones testified that he interpreted Publication 334, which he used to prepare petitioners' 1993 Schedule C, to mean that "you have a 2 years from 5 test, which means for 2 years you can run a loss and you can presume that loss to be a valid deduction unchallenged by the IRS, unless IRS shows it is not valid, which means, if they challenge that profit motivation, they have the burden of proof to challenge on the second year while you're not making a profit." He further stated: "So I refer to the IRS publication [334], and it's the second year of operation, therefore, that tells me he [petitioner] can file with certainty he will not be challenged at audit." However, Publication 334 states the following:

    Presumption of Profit

    An activity is presumed carried on for profit if it produced a profit in at least 3 of the last 5 tax years including the current year. * * * You have a profit when the gross income from an activity is more than the deductions for it.

        *       *       *       *       *       *       *

        If your business or investment activity passes this 3- * * * years-of-profit test, presume it is carried on for profit. * * * You can take all your business deductions from the activity, even for the years that you have a loss. You can rely on this presumption in every case, unless the IRS shows it is not valid.

Publication 334 does not state, as Mr. Grenville-Jones testified,
(continued...)

facts to provide informed advice with respect to petitioners' 1993 return and 1993 amended return.  See <u>Freytag v. Commissioner</u>, 89 T.C. at 888.

Based on the record before us, we find that petitioners have failed to satisfy their burden of proving that they did not act negligently with respect to their underpayment for 1993.  Accordingly, we sustain respondent's determination for that year imposing the accuracy-related penalty under section 6662(a).

To reflect the foregoing,

<u>Decision will be entered</u> <u>for respondent</u>.

---

[10](...continued)
that a taxpayer can have a loss for 2 years and presume that a deduction for that loss is valid.  Publication 334 is based on sec. 183(d), which, as pertinent here, makes it clear that a presumption with respect to a taxpayer's profit objective in conducting an activity arises only if for three out of five consecutive taxable years the gross income that such taxpayer derives from that activity exceeds that taxpayer's deductions attributable to that activity.