T.C. Summary Opinion 2016-26

UNITED STATES TAX COURT

GEORGE TZIVLERIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7780-14S.                    Filed June 20, 2016.

George Tzivleris, pro se.

<u>Jeremy D. Cameron</u> and <u>Peter T. McCary</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1] Unless otherwise indicated, all subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined the following deficiencies in petitioner's Federal income tax and accuracy-related penalties under section 6662(a):

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2009 | $10,984 | $2,197 |
| 2010 | 1,677 | 335 |
| 2011 | 8,671 | 1,734 |
| 2012 | 2,367 | 473 |

In an Amendment To Answer respondent asserted increased deficiencies and accuracy-related penalties for 2009, 2010, and 2011, which respondent subsequently conceded in full, together with the entire deficiency and penalty for 2012.

---

[1](...continued)
Internal Revenue Code in effect for the taxable years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the closest dollar.

After additional concessions,[2] and without regard to purely computational matters involving certain credits, the issues for decision are as follows:

(1) whether petitioner underreported his income for 2009, 2010, and 2011. We hold that he did to the extent provided herein;

(2) whether petitioner received income in the form of cancellation of indebtedness in 2009. We hold that he did;

(3) whether petitioner is entitled to deduct a section 1231 loss for 2009 in an amount greater than respondent determined. We hold that he is to the extent provided herein; and

(4) whether petitioner is liable for accuracy-related penalties for 2009, 2010, and 2011. We hold that he is not.

## Background

Some of the facts have been stipulated, and they are so found. The Court incorporates by reference the parties' stipulation of facts and accompanying exhibits.

---

[2] Respondent concedes in full petitioner's liability for self-employment tax for 2009, 2010, and 2011. Given that concession, petitioner is deemed to concede the deduction under sec. 164(f)(1) for one-half of his self-employment tax. Further, petitioner concedes that he failed to report interest income of $48, $27, and $63 for 2009, 2010, and 2011, respectively. Finally, certain other concessions by the parties will be discussed infra in the text.

Petitioner resided in the State of Florida at the time that the petition was timely filed with the Court.

<u>Petitioner's Business and Livelihood</u>

For quite some time, and in particular during the years in issue, petitioner made his living by steam cleaning and pressure washing exhaust fans, cooking hoods, and other restaurant equipment so as to eliminate grease and thereby prevent the occurrence of kitchen fires. Petitioner numbered some 250 restaurants among his clients, which included "mom & pop" and other independent restaurants as well as chain restaurants. Petitioner would typically visit each restaurant once every three to five months to steam clean and pressure wash its grease-covered equipment, with each visit lasting anywhere between 2.5 and 4 hours depending on the size of the restaurant, its volume of business, and its relative level of cleanliness. Payment for services rendered was by check, delivered either immediately upon completion of the job (typically for "mom & pop" and other smaller independent restaurants) or within a fixed number of days after presentation of an invoice (typically for larger independent and chain restaurants). Petitioner conducted his business through his solely owned S corporation, Mat-Lex, Inc.

During relevant periods petitioner maintained a $25,000 equity line of credit with Grow Financial Federal Credit Union (Grow Financial). Petitioner occasionally drew on this line of credit, particularly in 2009, to provide operating capital for his business and for other financial needs.

During the years in issue petitioner maintained a number of bank accounts with Bank of America and Grow Financial. Respondent performed a bank deposits analysis because of the inadequacy or unavailability of petitioner's books and records and determined in the notice of deficiency that petitioner had unreported income in the following amounts for 2009 through 2011:

|  | 2009 | 2010 | 2011 |
|---|---|---|---|
| Total deposits | $70,309 | $52,903 | $101,792 |
| Less: nontaxable & transfer deposits | (40,366) | (31,234) | (34,670) |
| Less: total reported income | (11,004) | (15,907) | (34,559) |
| Unreported income | 18,939 | 5,762 | 32,563 |

At trial respondent (R) conceded substantial portions of the unreported income that he had determined in the notice of deficiency (NoD), thus:

|  | 2009 | 2010 | 2011 |
|---|---|---|---|
| Unreported income per NoD | $18,939 | $5,762 | $32,563 |
| Less: conceded by R at trial | (10,592) | (3,309) | (29,000) |
| Balance in issue per R | 8,347 | 2,453 | 3,563 |

At trial petitioner (P) conceded a portion of the foregoing "Balance in issue per R" for each year, thus putting in issue the following amounts:

|  | 2009 | 2010 | 2011 |
| --- | --- | --- | --- |
| Balance in issue per R | $8,347 | $2,453 | $3,563 |
| Conceded by P at trial | (1,197) | (1,428) | (3,563) |
| Amount remaining in issue | 7,150 | 1,025 | -0- |

New Port Richie Condominium

In 2006, when the Florida real estate market was booming, petitioner purchased a two-bedroom condominium in New Port Richie, Florida, for $203,509, which he financed through Countrywide Financial Corp. (Countrywide). In addition, petitioner purchased certain fixtures, appliances, and various upgrades for the condominium, which he also financed through Countrywide. Petitioner held the condominium for the production of rents.

In 2009, after the Florida real estate market had imploded, petitioner found it financially necessary to dispose of the New Port Richie condominium (including all fixtures, appliances, and upgrades) for $100,000. At the time of sale petitioner's adjusted basis in the condominium was $188,555 and his adjusted basis in the fixtures, appliances, and upgrades was some $19,000. In conjunction with the sale, Bank of America (which had acquired Countrywide in the interim) also canceled debt of $117,528 owed by petitioner.

Around the time of the sale of the condominium it was suggested to petitioner that he consider filing for bankruptcy. Petitioner declined to consider that possibility because he wanted to "just get rid of the property" with its negative cashflow "without destroying my credit".

In the notice of deficiency respondent made two adjustments to petitioner's income for 2009 that were related to the condominium. First, respondent determined that petitioner had received income of $117,528 from the cancellation of indebtedness to Bank of America. Second, respondent determined that petitioner was entitled to deduct a section 1231 loss (described in the notice of deficiency as a loss on Form 4797, Sales of Business Property) of $88,555, which respondent computed as the difference between $100,000 and $188,555. Notably, on his 2009 tax return petitioner had neither reported any income from cancellation of indebtedness nor claimed any loss deduction from the sale of the condominium.

Accuracy-Related Penalty

Finally, in the notice of deficiency respondent determined that petitioner was liable for the accuracy-related penalty for each of the years in issue on the basis of (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax.

## Discussion

I. Unreported Income

    A. Burden of Proof

In general, the Commissioner's determination in a notice of deficiency is presumed to be correct, and the taxpayer bears the burden to show otherwise.[3] Rule 142(a); INDOPCO Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although the burden may shift to the Commissioner under section 7491(a) if certain requirements are satisfied, petitioner has not alleged that the section applies, and the record does not support its applicability.

    B. Reconstruction of Income

In the present case respondent reconstructed petitioner's income because of the inadequacy or unavailability of petitioner's books and records. See sec. 446(b); Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989); Schroeder v.

---

[3] For the presumption to apply in a case involving the receipt of unreported income, the deficiency determination must be supported by an evidentiary foundation linking the taxpayer to an income-producing activity. Blohm v. Commissioner, 994 F.2d 1542, 1548-1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636. However, as discussed in the next section in the text, the Commissioner is not obliged to show a likely source of income when using the bank deposits method of income reconstruction. In any event, the record is clear that petitioner derived income from his pressure washing and steam cleaning restaurant business.

Commissioner, 40 T.C. 30, 33 (1963); see also Giddio v. Commissioner, 54 T.C. 1530, 1532-1533 (1970). In so doing respondent used the bank deposits method, which has long been sanctioned by the courts as an acceptable method of income reconstruction. See Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977); see also DiLeo v. Commissioner, 96 T.C. 858, 867-868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

A bank deposit is prima facie evidence of income. DiLeo v. Commissioner, 96 T.C. at 868; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method assumes that all of the money deposited into a taxpayer's accounts is taxable income unless the taxpayer can show that the deposits are nontaxable. See DiLeo v. Commissioner, 96 T.C. at 868; see also Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964).

The Commissioner is not required to show a likely source of income when using the bank deposits method, but the Commissioner is obliged to take into account any nontaxable item or deductible expense that is known to him or her. See Price, 335 F.2d at 677; Tokarski v. Commissioner, 87 T.C. at 77. After the Commissioner reconstructs a taxpayer's income using the bank deposits method, the taxpayer bears the burden of proving error, Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. at 883, and the taxpayer may do

so by proving that a deposit is nontaxable, Clayton v. Commissioner, 102 T.C.

632; Omar v. Commissioner, T.C. Memo. 2015-238, at *14-*15.

C. Nontaxable Deposits

Petitioner does not challenge respondent's bank deposits analysis other than

to contend that it understates the amounts of nontaxable deposits. But in this

regard petitioner offered limited proof at trial.[4] However, we do accept

petitioner's testimony, which we found credible, that he maintained a line of credit

with Grow Financial that he occasionally drew on to provide operating capital for

his business and for other financial needs, particularly in 2009. In this regard we

conclude that a portion, but not all, of the deposits remaining in issue for 2009 is

attributable to advances from this line of credit.

Mindful as we are of the recordkeeping requirements of section 6001 and

the regulations promulgated thereunder that require taxpayers to maintain records

sufficient to permit verification of income, see sec. 1.6001-1(a), (e), Income Tax

Regs., and using our best judgment, we conclude that petitioner had unreported

income for 2009 of $1,397 (inclusive of the $1,197 that he conceded at trial) and

---

[4] See Rule 143(c) (providing in part that "statements in briefs * * * do not constitute evidence"); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992) (noting that statements in briefs cannot be used to supplement the record in a Tax Court case).

that the balance of the deposits remaining in issue for that year (i.e., $8,347 less $1,397, or $6,950) is attributable to nontaxable advances from the Grow Financial line of credit that were not otherwise accounted for by respondent in his bank deposits analysis, see Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Buske v. Commissioner, T.C. Memo. 1998-29 (applying Cohan to determine amount of unreported income); Kale v. Commissioner, T.C. Memo. 1996-197 (same); Alanis v. Commissioner, T.C. Memo. 1995-263 (holding that in cases of unreported income it may be appropriate for the Court to make estimates of the amount of income that the taxpayer has failed to report, applying the Cohan principle); Smith v. Commissioner, T.C. Memo. 1993-548 (applying Cohan to adjust both bank deposits and nontaxable items in reconstructing income).

In sum, taking into account the foregoing cases, and applying Rule 142(a), INDOPCO Inc. v. Commissioner, 503 U.S. 79, and Welch v. Helvering, 290 U.S. 111, petitioner had unreported income for 2009, 2010, and 2011 of $1,397, $2,453, and $3,563, respectively.

II. Issues Related to the New Port Richie Condominium

A. Cancellation of Indebtedness

Money received pursuant to a loan is not includible in gross income at the time of the loan because there is an obligation to repay it. See Commissioner v.

<u>Tufts</u>, 461 U.S. 300, 307 (1983). However, if the obligation to repay is forgiven or canceled by the lender, gross income may arise. <u>See</u> sec. 61(a)(12); <u>United States v. Kirby Lumber Co.</u>, 284 U.S. 1, 3 (1931); <u>see also</u> sec. 108.

In general, cancellation of indebtedness produces income in an amount equal to the difference between the amount due on the obligation and the amount paid for the discharge. <u>See</u> <u>Babin v. Commissioner</u>, 23 F.3d 1032, 1034 (6th Cir. 1994), <u>aff'g</u> T.C. Memo. 1992-673. The rationale for this principle is that cancellation of indebtedness provides the debtor with an economic benefit that is equivalent to income. <u>Kirby Lumber Co.</u>, 284 U.S. 1; <u>see</u> <u>Friedman v. Commissioner</u>, 216 F.3d 537 (6th Cir. 2000), <u>aff'g</u> T.C. Memo. 1998-196.

There are, however, exceptions to the foregoing rule. One exception, known as the insolvency exception, was originally judicially created but has now been codified. <u>See</u> <u>Babin v. Commissioner</u>, 23 F.3d at 1035. Thus, section 108(a)(1)(B) provides that a taxpayer may exclude from gross income the income from cancellation of indebtedness if the cancellation occurs when the taxpayer is insolvent.

Petitioner alleged in the petition that he was insolvent at the time that Bank of America canceled his indebtedness. At trial petitioner pointed to the depressed state of the Florida real estate market in 2009; however, he did not introduce

sufficient evidence to permit a finding of personal insolvency. See Traci v. Commissioner, T.C. Memo. 1992-708 ("The burden of establishing that the insolvency exception applies is upon petitioner."); Bressi v. Commissioner, T.C. Memo. 1991-651 (same), aff'd without published opinion, 989 F.2d 486 (3d Cir. 1993). Accordingly, the Court is obliged to sustain respondent's determination.

B. Section 1231 Loss

Section 1231 provides a rule that has long offered the best of all possible worlds to a taxpayer, i.e., "capital gains treatment for certain transactions that would otherwise be ordinary income, and * * * ordinary loss treatment for certain transactions that would otherwise constitute capital losses." Gaines v. Commissioner, T.C. Memo. 1982-731; see sec. 1231(a)(1) and (2); Rower v. Commissioner, T.C. Memo. 1998-117.

Insofar as losses are concerned and as pertinent herein, a section 1231(a)(3) loss is a loss from the sale or exchange of property used in a trade or business. The rental of one parcel of improved real estate may constitute a trade or business such that the sale of the parcel implicates section 1231. Hajos v. Commissioner, T.C. Memo. 1964-328.

In the present case respondent determined that petitioner was entitled to deduct a section 1231 loss of $88,555 for 2009 from the sale of the condominium.

However, respondent understated the amount of the allowable loss by $19,000, i.e., by the amount of petitioner's adjusted basis in the fixtures, appliances, and upgrades to the condominium. At trial petitioner introduced no persuasive evidence that the loss should be any greater than $107,555 (i.e., $88,555 + $19,000). Accordingly, the Court holds that petitioner is entitled to deduct a section 1231 loss of $107,555 for 2009.

III. Accuracy-Related Penalty

As relevant herein, section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the amount of any underpayment attributable to either (1) negligence or disregard of rules or regulations or (2) a substantial understatement of income tax. See sec. 6662(c) (regarding negligence) and (d) (regarding substantial understatement).

With respect to a taxpayer's liability for the penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner satisfies the burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's

determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. at 115; Higbee v. Commissioner, 116 T.C. 438.

Section 6664 provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs. The decision whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor in so deciding is the extent of the taxpayer's effort to assess the proper tax liability. Id. This includes the taxpayer's reasonable and good faith reliance on the advice of a tax professional. Id.

In order to facilitate resolution of the penalty issue we will proceed as if respondent had satisfied his burden of production. That said, it is clear from the record that petitioner is neither "educated school-wise" nor at all experienced in tax matters. It is equally clear from the record that petitioner relied reasonably and in good faith on his accountant and commercial return preparer (whose competency was worthy of petitioner's reliance, see Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002)) to

determine and report his tax liability for each of the years in issue and that, in so doing, he provided information and documents as requested by them. Admittedly, for 2009 it is troubling that petitioner's return did not reflect income from cancellation of indebtedness by Bank of America nor otherwise report all of his income. However, petitioner's tax professional took the position that the insolvency exception negated the inclusion of the canceled debt in gross income, a factual matter which, although ultimately unproven at trial, was not unreasonable. Further, the canceled debt was virtually offset by the section 1231 loss deduction, which went unclaimed on the return. Finally, the unreported income for 2009, as well as for 2010 and 2011, was determined by an indirect method of income reconstruction, was modest in amount, and might have been de minimis (or eliminated in its entirety) if petitioner had been more successful in adducing evidence at trial regarding nontaxable deposits. Thus, under these circumstances we do not think that imposition of the accuracy-related penalty is warranted, and we therefore do not sustain respondent's determination of the penalty for the years remaining in issue.

In order to give effect to the Court's disposition of the disputed issues, as well as the parties' concessions,

Decision will be entered

under Rule 155.